Darcie A. **STEADMAN** on Behalf of Jonathon **STEADMAN**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

**Civ. A. No. 84–214 ERIE.**

United States District Court, W.D. Pennsylvania.

July 11, 1985.

Timothy D. McNair, Schroeck, Segel & Murray, Erie, Pa., for plaintiff.

J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff here appeals the Secretary's denial of Jonathon Steadman's application for Supplemental Security Income. 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405(g). Darcie Steadman, Jonathon's mother, alleges that Jonathon became disabled in 1980 because of epilepsy. The Secretary acknowledges that a neurological impairment exists, but argues that this condition is not serious enough to be considered disabling. We now address the parties' cross-motions for summary judgment.

Jonathon Steadman is eight years old. He was first examined by physicians in December 1982 after his mother and kindergarten teacher noticed that he was having "staring spells" and that his performance in school was declining. At a parent-teacher conference in 1982, Mrs. Steadman was informed that Jonathon usually required instructions to be repeated while other children had already begun their tasks. When the teacher called his attention to his deficiencies, he became very nervous. Mrs. Steadman received notes from the teacher stating that he was not participating in class; that he does a lot of daydreaming; and that he had difficulty completing assignments, taking two or three days to finish work that should be done in twenty minutes. Record at 108–109. The following year Jonathon's first grade teacher reported that he "seemed to be living in a world of his own and refuses to even try to learn such little tasks as tying a shoe lace or keeping himself neat." Record at 106. He suffered enuresis for the first time in school and at home. Record at 98. Otherwise he seems very bright, in kindergarten scoring in the top 3% of an intelligence test given to five and six year olds. Record at 107.

Jonathon's staring spells have been described in the record. They last for 30–60 seconds and are usually characterized by a blank stare and a loss of awareness. Occasionally, his eyes roll back or his head drops and his mouth opens. Record at 100. In one instance he fell to the floor in school without remembering what happened. Record at 110. He has suffered physical injury and come dangerously close to injury, a condition his mother claims is attributable to the temporary losses of awareness. He has been struck in the head and face with thrown baseballs during routine play. He made no defensive reaction before being struck in the face by another child wielding a gas can. He put his hand through the window of a closing storm door. He once had to be pulled from the middle of a street after stopping to stare at a traffic light, ignoring his brother's warnings. Record at 119–20.[1]

While we must admit that most of these incidents by themselves seem typical of young boys, we have no doubt that, considered in combination and with the medical evidence, Jonathon suffers from a serious impairment. Jonathon was examined three times at a pediatric clinic between December of 1982 and February of 1983, and four

---

1. The probative evidence comes from Jonathon's brother, a minor whose competence ordinarily would be subject to scrutiny. His age is unstated, but he appears from the activities described to be a few years older than Jonathon.

In evaluating this evidence, however, we must consider that these proceedings are not adversarial and that plaintiffs have not had the assistance of counsel.

times in a neurology clinic from March 1983 to November 1983. He has been diagnosed by Dr. K. Dudenhoffer as having a complex absence seizure disorder, also referred to as petit mal seizures. Record at 96. He has had an abnormal electroencephalograph, reported by Dr. M. Duncombe in March 1983. Jonathon is taking Zarotin and Depakene, anti-convulsants, to control his condition. This course has been successful in lessening the frequency of his spells, but he still suffers three spells a day. Record at 24 and 104. In addition, these drugs, the dosages of which have been increased over time, have made him "hyper". Record at 96–105.

Our task on review is to determine whether there is substantial evidence on record to support the Secretary's decision. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Because we are reviewing a decision involving a minor, we must refer to the Secretary's regulations on this subject. As provided in 20 C.F.R. § 416.923, a person under age 18 will be found disabled if he or she:

(a) is not engaging in any substantial gainful activity;

(b) Has a medically determinable physical or mental impairment which is as severe as any impairment which would be considered disabling to a person over age 18.

This impairment must (1) last for a period of at least twelve months and (2) match a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, or (3) is determined by the Secretary to be medically equal to such listing.

■ In his opinion, the ALJ applies two specific descriptions of neurological impairments from the regulations. Record at 11–12; see 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02 and § 11.03. He found that Jonathon's condition did not meet the listing for Section 11.02, epilepsy—major motor seizures, but made no finding as to Section 11.03, epilepsy—minor motor seizures. This absence is decisive since we find that Jonathon's condition meets the criteria listed in Section 11.03. Section 11.03 lists the following as a disabling impairment:

Epilepsy-minor motor seizures (petit mal, psycho-motor, or focal), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior *or significant interference with activity during the day.*

The evidence on record meets these requirements. As described above, Jonathon's petit mal seizures have been diagnosed both by Dr. Dudenhoffer and Dr. Duncombe; the seizures and their sometimes dangerous effects are described thoroughly in the record. These descriptions are corroborated by an abnormal EEG. The seizures typically occur more than once *daily.* While Jonathon's medications have reduced the number of seizures, their occurrence has persisted throughout the twelve months of medical treatment covered in the record. We have no doubt that the testimony of his family members and teachers supports the finding that the seizures alter his awareness and significantly interfere with behavior in school and at home.

■ In her brief, the Secretary argues that a certain document made in June 1983 refutes all the other evidence of Jonathon's impairment. This document is a three sentence summary of an Administration employee's conversation with Dr. Duncombe as he reviewed his notes. Record at 93. This evidence may lessen the severity one may attach to an evaluation of the evidence of Jonathon's condition. It does not, however, constitute substantial evidence for denying his application for benefits.

We can deduce no definite date of onset for Jonathon's condition; Dr. Duncombe has stated that it could have begun in infancy. Record at 103. We, therefore, will reverse the Secretary and order bene-

fits paid from July 29, 1980, the date of Jonathon's first contact with the Erie County Crippled Children Society for symptoms that then reflected his present impairments. Record at 126.